Luis A. Tipacti
14900 Ventura Blvd.,
Suite 200
Sherman Oaks, California 91403

In Pro-Se

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., d/b/a/ INTEGRATED SPORTS MEDIA<br>　　　　Plaintiffs,<br><br>vs.<br><br>CLAUDIA A. PORTOCARRERO, et al.,<br><br>　　　　Defendants. | Case No. 2:19-cv-08726-TJH-(PLAx)<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE DEFENDANT, LUIS ALEJANDRO TIPACTI FROM CASE No. 2:19-cv-08726**<br>**With Declaration in Support Thereof** |

Please take notice that LUIS ALEJANDRO TIPACTI, (The Defendant), will move the above-entitled Court for and Order granting Defendant's Motion to Strike plaintiff from Case No. 2:19-cv-08726-TJH-PLA. Date: (COVID-19) at the discretion of the Court; Time: (COVID-19) at the discretion of the Court. A copy of the motion and declaration is attached hereto. The motion will be heard at The United States District Court-Central District of California 350 West 1st Street, Los Angeles, California 90012.

Dated; November 4, 2020　　　　　　　　　　　　　　Respectfully Submitted

　　　　　　　　　　　　　　　　　　　　　　　　　　　　Luis Alejandro Tipacti

1
NOTICE OF MOTION TO STRIKE

Luis A. Tipacti
14900 Ventura Blvd.,
Suite 200
Sherman Oaks, California 91403

In Pro-Se

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., d/b/a/ INTEGRATED SPORTS MEDIA<br>　　　　Plaintiffs,<br><br>vs.<br><br>CLAUDIA A. PORTOCARRERO, et al.,<br><br>　　　　Defendants. | Case No. 2:19-cv-08726-TJH-(PLAx)<br><br>**MOTION TO STRIKE DEFENDANT, LUIS ALEJANDRO TIPACTI FROM CASE No. 2:19-cv-08726**<br>**With Declaration in Support Thereof** |

NOW COMES the defendant, LUIS ALEJANDRO TIPACTI, and for a cause of action hereby stated the following.

1. Defendant Sublease the property located at 15030 Ventura Blvd., Store #24 in the County of Los Angeles, City of Sherman Oaks, California 91403 to Claudia A. Portocarrero, (A Businessperson).

2. The term of our lease agreement was for five years commencing on February 5th, 2018.

3. The Sublease Agreement clearly spells out the terms including the full responsibility of the Subletter, Claudia A. Portocarrero. See Exhibit "A".

1
MOTION TO STRIKE

4. The contract that the Defendant, Claudia A. Portocarrero enter was entered and signed by her and Innovative Sports Management, Inc., d/b/a/Integrated Sports Media. And all payment arrangement was with her and said Business.

5. At no time did defendant, Luis Alejandro Tipacti sign any kind of agreement with Innovative Sports Management d/b/a/ Integrated Sports Media for any purpose at said business location.

6. Therefore, defendant, Luis Alejandro Tipacti was not responsible for any private and/or business transaction between Claudia A. Portocarrero and said Business and in that I, Luis Alejandro Tipacti requests this court to Strike Luis Alejandro Tipacti from Case Number: 2-19-cv-08726-TJH-(PLAx).

Dated; November 4, 2020                    Respectfully Submitted

                                           _____
                                           Luis Alejandro Tipacti

//
//
//
//
//
//
//
//
//

# **DECLARATION IN SUPPORT THEREOF**

I, LUIS ALEJANDRO TIPACTI (Declarant) do hereby declare:

1. That I was named in Filed Complaint under Case No.: 2:19-cv-08726-TJH-(PLAx)

2. That, I am not a party to any kind of agreement between Defendant, Claudia A. Portocarrero and Innovative Sports Management, Inc., d/b/a/Integrated Sports Media entered and sign them and the two only.

I declare under penalty of perjury, under the Laws of the State of California that the foregoing paragraph is true and correct.

Dated: November 04, 2020

Luis Alejandro Tipacti

# EXHIBIT "A"

SUBLEASE AGREEMENT

**SUBLEASE AGREEMENT**

THIS SUBLEASE AGREEMENT is entered into on FEBRUARY 5th 20 18 by and between LUIS TIPACTI _____ ("SUBLESSOR"), with an address of 14900 VENTURA BLVD SUITE 200 SHERMAN OAKS CA 91403 and CLAUDIA A PORTOCARRERO _____, ("SUBTENANT"), currently located at 15030 VENTURA BLVD STORE#24 SHERMAN OAKS CA 91403 (the "Parties").

FOR VALUABLE CONSIDERATION, the Parties agree to the following terms and conditions.

1. Premises. Sublessor hereby subleases to Sublessee and Sublessee hereby subleases from Sublessor for the term specified below, and upon all of the conditions set forth herein, that certain real property, including all improvements thereon, commonly known by the street address of 15030 VENTURA BLVD STORE#24 _____, located in the County of LOS ANGELES, State of California, and generally described as 15030 VENTURA BLVD STORE#24 SHERMAN OAKS CA 91403 (the "Premises").

2. Term. The term of this Sublease shall be for 5 YEARS commencing on FEBRUARY 9th, 2018 and ending on FEBRUARY 9th, 2023, unless sooner terminated pursuant to any provision hereof. Sublessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises by the commencement date. If, despite said efforts, Sublessor is unable to deliver possession as agreed, the rights and obligations of Sublessor and Sublessee shall be as set forth in the Master Lease and in Paragraph 7 of this Sublease.

3. Base Rent. Sublessee shall pay to Sublessor as Base Rent for the Premises equal monthly payments of $ 6,074.00 in advance, on the 1rst day of each month of the term hereof. Sublessee shall pay Sublessor upon the execution hereof $ 4,050.00 as Base Rent for the period 02/09/2018 through 02/28/2018. Base Rent which is less than one month for any period during the term hereof shall be calculated at a pro rata portion of the monthly installment.

4. Rent Defined. All monetary obligations of Sublessee to Sublessor under the terms of this Sublease (except for the Security Deposit) are deemed to be rent ("Rent"). Rent shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

5. Security Deposit. Sublessee shall deposit with Sublessor upon execution hereof $ 12,000.00 as security for Sublessee's faithful performance of Sublessee's obligations hereunder. The rights and obligations of Sublessor and Sublessee as to said Security Deposit shall be as set forth in the Master Lease (as modified by Paragraph 7 of this Sublease).

6. Use.

    (a) Agreed Use. The Premises shall be used and occupied only for _____ PERUVIAN RESTAURANT _____ and for no other purpose.

    (b) Compliance. Sublessor warrants that the improvements on the Premises comply with all applicable covenants or restrictions of record and applicable building codes, regulations and ordinances in effect on the commencement date. Said warranty does not apply to the use to which Sublessee will put the Premises or to any alterations or utility installations made or to be made by Sublessee. NOTE: Sublessee is responsible for determining whether or not the zoning is appropriate for its intended use, and acknowledges that past uses of the Premises may no longer be allowed. If the Premises do not comply with said warranty, or in the event that the applicable requirements are hereafter changed, the rights and obligations of Sublessor and Sublessee shall be as provided in the Master Lease (as modified in Paragraph 7 of this Sublease).

    (c) Acceptance of Premises and Lessee. Sublessee acknowledges that (i) it has been advised to satisfy itself with respect to the condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with all applicable requirements) and their suitability for Sublessee's intended use; (ii) Sublessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises; and (iii) neither Sublessor, Sublessor's agents, nor any broker has made any oral or written representations or warranties with respect to said matters other than as set forth in this Sublease. In addition, Sublessor acknowledges that it is Sublessor's sole

Page 1

SUBLEASE AGREEMENT

responsibility to investigate the financial capability and/or suitability of all proposed tenants.

7. Master Lease.

(a) Sublessor is the lessee of the Premises by virtue of a lease, (the "Master Lease"), a copy of which is attached hereto, wherein ____SIMHA PARTNERSHIP, LTD_____ is the lessor, ("Master Lessor").

(b) This Sublease is and shall at all times be subject and subordinate to the Master Lease.

(c) The terms, conditions and respective obligations of Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease shall control over the Master Lease. Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Lessor" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease the word "Lessee" is used it shall be deemed to mean the Sublessee herein.

(d) During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease (the "Sublessee's Assumed Obligations"). The obligations that Sublessee has not assumed under this Paragraph 7 are hereinafter referred to as the "Sublessor's Remaining Obligations".

(e) Sublessee shall hold Sublessor free and harmless from all liability, judgments, costs, damages, claims or demands, including reasonable attorneys' fees, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.

(f) Sublessor agrees to maintain the Master Lease during the entire term of this Sublease, subject however, to any earlier termination of the Master Lease without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations.

(g) Sublessor represents to Sublessee that the Master Lease is in full force and effect and that no default exists on the part of any party to the Master Lease.

8. Assignment of Sublease and Default.

(a) Sublessor hereby assigns and transfers to Master Lessor the Sublessor's interest in this Sublease, subject to the provisions of this Paragraph 8.

(b) Master Lessor, by executing this document, agrees that until a default occurs in the performance of Sublessor's Obligations under the Master Lease, that Sublessor may receive, collect and enjoy the Rent accruing under this Sublease. However, if Sublessor defaults in the performance of its obligations to Master Lessor, then Master Lessor may, at its option, receive and collect, directly from Sublessee, all Rent owing and to be owed under this Sublease. Master Lessor shall not, by reason of this assignment of the Sublease nor by reason of the collection of the Rent from Sublessee, be deemed liable to Sublessee for any failure of Sublessor to perform and comply with Sublessor's Remaining Obligations.

(c) Sublessor hereby irrevocably authorizes and directs Sublessee upon receipt of any written notice from the Master Lessor stating that a default exists in the performance of Sublessor's obligations under the Master Lease, to pay to Master Lessor the Rent due and to become due under the Sublease. Sublessor agrees that Sublessee shall have the right to rely upon any such statement and request from Master Lessor, and that Sublessee shall pay such Rent to Master Lessor without any obligation or right to inquire as to whether such default exists and notwithstanding any notice from or claim from Sublessor to the contrary and Sublessor shall have no right or claim against Sublessee for any such Rent so paid by Sublessee.

(d) No changes or modifications shall be made to this Sublease without the consent of Master Lessor.

9. Consent of Master Lessor.

## SUBLEASE AGREEMENT

(a) In the event that the Master Lease requires that Sublessor obtain the consent of Master Lessor to any subletting by Sublessor, then this Sublease shall not be effective unless, within ten (10) days of the date hereof, Master Lessor signs this Sublease thereby giving its consent to this subletting.

(b) In the event that the obligations of the Sublessor under the Master Lease have been guaranteed by third Parties, then neither this Sublease nor the Master Lessor's consent shall be effective unless, within ten (10) days of the date hereof, said guarantors sign this Sublease thereby giving their consent to this Sublease.

(c) In the event that Master Lessor does give such consent then:

(i) Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay the Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Lease.

(ii) The acceptance of Rent by Master Lessor from Sublessee or anyone else liable under the Master Lease shall not be deemed a waiver by Master Lessor of any provisions of the Master Lease.

(iii) The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.

(iv) In the event of any default of Sublessor under the Master Lease, Master Lessor may proceed directly against Sublessor, any guarantors or anyone else liable under the Master Lease or this Sublease without first exhausting Master Lessor's remedies against any other person or entity liable thereon to Master Lessor.

(v) Master Lessor may consent to subsequent sublettings and assignments of the Master Lease or this Sublease or any amendments or modifications thereto without notifying Sublessor or anyone else liable under the Master Lease and without obtaining their consent and such action shall not relieve such persons from liability.

(vi) In the event that Sublessor should default in its obligations under the Master Lease, then Master Lessor, at its option and without being obligated to do so, may require Sublessee to attorn to Master Lessor in which event Master Lessor shall undertake the obligations of Sublessor under this Sublease from the time of the exercise of said option to termination of this Sublease but Master Lessor shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Lessor be liable for any other defaults of the Sublessor under the Sublease.

(d) The signatures of the Master Lessor and any Guarantors of Sublessor at the end of this document shall constitute their consent to the terms of this Sublease.

(e) Master Lessor acknowledges that, to the best of Master Lessor's knowledge, no default presently exists under the Master Lease of obligations to be performed by Sublessor and that the Master Lease is in full force and effect.

(f) In the event that Sublessor defaults under its obligations to be performed under the Master Lease by Sublessor, Master Lessor agrees to deliver to Sublessee a copy of any such notice of default. Sublessee shall have the right to cure any default of Sublessor described in any notice within ten (10) days after such service of such notice of default on Sublessee. If such default is cured by Sublessee, then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

12. Attorney's Fees . If any party or the Broker named herein brings an action to enforce the terms hereof or to declare rights hereunder, the prevailing party in any such action, on trial and appeal, shall be entitled to his reasonable attorney's fees to be paid by the losing party as fixed by the Court.

13. Additional Provisions.

Insurance: Subtenant hereby agrees to mantain a policy of personal injury and property damage, public health Insurance in an amount not less than $1,000,000.00. Subtenant is required to provide the Sublessor an insurance certificate per the requirements of the sublease upon execution of the sublease.

# PROOF OF SERVICE BY UNITED STATES MAIL
(Code of Civil Procedure Section 1015)
(28 U.S.C. Section 1746)

I, CHARLES JORDAN, depose and say, the following statement is true and correct under the penalty of perjury according to the laws of the State of California based on matters known to me personally to be true:

1) I am over the age of eighteen years and not a party to the Case No.: 2:19-cv-08726-TJH-(PLAx). Case is located at: U.S. District Court-Central District of California-Western Division, 255 East Temple Street, Los Angeles, California 90012; and I am a resident of the State of California with a present address of:

14900 Ventura Blvd., Suite 200
Sherman Oaks, California 91403

2) <u>By Mail</u>: On this November 05, 2020, I caused a true and correct copy of the following document by placing it thereof enclosed in a sealed envelope with the postage thereon fully prepaid by depositing them in the United States Post Office in Castaic, California.

**Documents Served on Defendant:**

1. Notice of Motion and Motion to Strike Defendant Luis Alejandro Tipacti From Case No. 2:19-cv-08726-TJH-PLAx. Declaration in Support; Exhibit "A".

3) Declaration of Charles Jordan:
I, Charles Jordan, do hereby declare that I served the above Document on the following attorney for defendant:

1. Thomas P. Riley
Law Offices of Thomas P. Riley
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030

**DECLARATION OF CHARLES JORDAN**

I, Charles Jordan, declare under the penalty of perjury under the laws of the United States of California that the foregoing is true and correct.
Executed on November 05, 2020 at Castaic, California.

Charles Jordan

Mr. Luis A. Tipacti
14900 Ventura Blvd.,
Suite 200
Sherman Oaks, CA 91403

United States District Court
Central District of California
255 East Temple Street
Los Angeles, CA 90012

RECEIVED
CLERK, U.S. DISTRICT COURT
NOV - 9 2020
CENTRAL DISTRICT OF CA
BY

U.S. POSTAGE PAID
FCM LG ENV
SANTA CLARITA,
91383
NOV 05, 20
AMOUNT
$1.80
R2304M114924-03

90012